CPH Legacy Corporation v. Palmetto Health, Mr. Parr. May it please the Court. This is an easy appeal today, but it's important because it involves well-settled principles of antitrust law that undergird the competitive process that's so essential to our prosperity and our economy. And it's important because the District Court misapplies those principles. There are two issues. One, whether when a monopolist intentionally harms the competitive ability of its sole competitor to eliminate competition, does that competitor suffer antitrust injury? And two... Well, they weren't monopolists before, allegedly. I mean, allegedly they became monopolists or had monopoly power, according to your complaint, after all the so-called raid of doctors. But you say this is an easy case, and it may be an easy case, but I've never understood that a fight among competitors is the stuff for an antitrust campaign. It's the stuff maybe for all kinds of torts and breaches of contracts. Tortious interference of contracts. Sure, raiding. But the competition between the two, the persons who can challenge the competition and they're hurt to the competition are the people who are benefited by the competition, which would be the patients or maybe some health care providers. But the fight among the competitors is not antitrust injury. There's injury. But you better step back. You say it's an easy case, but I haven't seen it yet. So I want to have your elucidation on why you think this stealing of, so to speak, that's your position, that they stole these doctors and basically have obtained monopoly power over the doctor practice. How the fight among these competitors is antitrust laws. You know the famous line from Brunswick that the laws were meant not to protect competitors but competition. And the people who have standing to assert the damage to the competition are those who were the beneficiaries of competition. Patients and maybe health care providers of some kind. But go ahead. Thank you. Thank you, Judge Niemeyer. And you raised several questions. Let me just address one thing and then I'll turn to the main point that you made. The market structure is a little bit more nuanced than your comments reflect. The complaint alleges that Palmetto possessed monopoly in general acute care services from the beginning and that it's intent to injure the company. What was the market? What was their market share and how you define the market? That's all in the complaint. Well, tell me. And the market is, there are three markets in the complaint. General acute care services for hospitals. And I think if you look in the complaint, the market shares are allegedly, and I think it's a 65% market share. This is before all the doctors came over? Before, yes. What were the doctors in the other practice, in your practice, before the rating took place? Now, I didn't say it wasn't a market. You said in the complaint they competed with each other. They did. Well. Three markets, and I want to answer your question, but I just didn't finish answering the first question. Three markets are acute care services, inpatient orthopedic surgery, and orthopedic physician services. Those three markets. And there was already monopoly power in the first one. And the allegation is that the conspiracy was designed. So they had the power to fix prices, and the competition wouldn't bring the prices down. That's the allegation in the complaint. And that hasn't been challenged on this motion. That's not a basis of the ruling. No, no. It's fair enough. But the fight is that you lost your doctors, and they stole your doctors. And it's not just the doctors, Your Honor. Or staff, then. The fight is that they wanted to undermine the competitive ability of their major competitor. And I'm suggesting that that is not the structure of an antitrust claim. It is the structure of tort claims, or breach of contract claims, or interference claims, or whatever. If you – in our brief, we have referred the court to a Rita and Hobekamp's treatise on antitrust. Oh, I'm familiar with all that. I've been over this territory many times. I know you have. And you wrote the cloth opinion, and you're on top of all of this. Well, I don't know if I'm on top. That's why we're here for our time. As a Rita points out in their treatise, competitors in this context are important plaintiffs for three reasons. Because – and this is on page 48 of our brief, this quotation from Rita. Three important reasons. Because unlike consumers, competitors, like my client, feel the effects of the conspiracy first. And they are the first ones who can take action to deal with it. Of course they feel it. A fight among competitors hurts. It bruises, it creates harm, injury, damages, and so forth. But that isn't the type of injury that the antitrust laws are focusing on. They're focusing on damage to competition. And the people who have standing to raise those injuries are the people who are the beneficiaries of the competition. According to a Rita in Hovingkamp, which we quote on page 43, Isn't your strongest anti-competitive injury or effect is the ability to obtain preferential treatment from insurance companies? I don't think that's the strongest one. The strongest one was depriving the competitor of its main competitive asset, the orthopedic line of business, and obtaining control of the surgeons so that they could prevent them from admitting patients to my client. Well, wouldn't that injury have been exactly the same if all those doctors had just decided to retire? So how is it an antitrust injury? It's hard to imagine that all these doctors would retire at one time. Well, these doctors do well. Well, it wouldn't have been the same because if doctors are retiring, it's easier to replace them. And as we allege in the complaint, the difficulty of replacing the doctors in time to counteract this anti-competitive effect was magnified by the fact of the monopoly that was obtained. Okay, well, let's take it out of retire. Let's say they decided to all start some independent action, independent of both the plaintiff and the defendant. Why would that not inflict on you exactly the same injury that you're talking about? It would not at all because what we allege in the complaint was before they were employed by my client, they were an independent practice, and they still sent their patients to my client. I know, but they decided not to. Well, we contend, and I think it's basically irrefutable, if the doctors had gone off into an independent practice, they preferred to use my client's hospital. They preferred the Northeast Providence Orthopedic Hospital, and their patients preferred to be operated on in Richland County. And my client would have been free to compete for the admissions of those doctors based on quality and all of the things that we want to stimulate through competition. And only by Palmetto acquiring this practice was it in a position to prevent these doctors from using my client's hospital. It's a very important point, and I'm glad you raised it. Had they gone off on their own, it would not have been the same thing at all. It would not have had the impact of competition. Well, you would have not had the services. We're positing a situation where they were no longer using your hospital, not because they were going to the defendant's facility, but just for some reasons unrelated to that. It would have been exactly the same damage as you're asserting here. Injury, as you're asserting here. Your Honor, this is an important point, so I want to be sure I'm answering you. Yes, I would like that. Had the doctors decided to leave the employment of my client and establish their independent practice, my client would have been completely free to compete for their admissions because they would have been free to choose the hospital that best served them. And the complaint alleges that they preferred my client's hospital. Yes, I understand what you've alleged. What I'm asking you is to look at a hypothetical where they don't. They decide not to go with your hospital. Wouldn't the injury that would occur to your client be exactly the same as the injury that you're asserting here? And therefore, it's not an antitrust injury. Well, if the doctors decide not to go to my hospital in the free competitive process, it would be an entirely different situation from what is alleged here. And I would like to point the Court to a case that isn't in the briefs, but relates to the issue that you all have mentioned about whether this is just a tort or whether it is an antitrust violation. And that is the associated radio case, which is... It's a Fifth Circuit case, 624 F. 2nd, 1342, which addresses this very point. Are business torts, can they be the basis of an antitrust claim? And concludes that they can in a context like the one that is presented here. This is not the mere hiring away of a few employees. This is inducing executives who are responsible for maintaining and protecting Providence's orthopedic line of business to breach their fiduciary duties, to induce the doctors to leave when they didn't want to leave. The complaint alleges... How did they induce them to leave? They enticed them to leave. We don't allege all about what they said about how they got them to leave. Did they pay them better? We don't have that information. We haven't started discovery. But we do allege... You just go back and go out and hire all the doctors and pay them better than they're paid at Palmetto? Have a staff of doctors use your hospital? They entered employment contracts with Palmetto and I don't think that they're free to... Hire other people. The complaint alleges that that is impossible to do within a length of time that would allow the competition to be addressed. Why? Because of the market share of Palmetto once it took all of these doctors. It's difficult to recruit doctors into a situation where there's another dominant practice. What if you added 50% higher income and benefits to these doctors, induced them to come to your hospital? It's hard to induce people to come to your hospital when you've lost your entire staff. The whole operation has left. I'm sorry, I didn't understand. Pay them twice as much too. In other words, it sounds to me like this is just a fight over who works for whom and what better conditions. I mean, there's a reason why they all left. They didn't have control over you. They didn't control your market. They induced people to leave, which is maybe legally and maybe illegally. And you've alleged all that and you've got those claims all pending. But the question is, is that type of conduct antitrust conduct? And I'm having a hard time understanding that. We would submit that the associated radio case that I mentioned to you, the Conwood case and the other cases that we have cited in our brief, have recognized that in appropriate circumstances such as this one, when you commit a whole series of business torts that are designed to eliminate your competitor. Oh, sure. A tort can be part of antitrust cases. But the question is, in this case, where Palmetto's induced doctors to go with it and take them away from you, it's a big rating case, but is that an antitrust case? I would also like to point you to a section of ARETA that we have not mentioned in our brief, which says, although ARETA recognizes that it's important to allow competitors to offer legitimate jobs to your employees. But ARETA concludes, except for a bona fide offer of employment, almost any contact by the monopolist with the rival's employees is suspect, and that there is no redeeming virtue to allowing a company like Palmetto to induce breaches of loyalty, such as occurred here, to do the damage that it did to its competitor, so that it would be in a position to monopolize this market. And this is a classic antitrust violation, and I submit to the court that if this is allowed to stand, it will eliminate standing on the part of a very important plaintiff, the injured competitor, which is what has been alleged here in this complaint. And injured competitors are often, as ARETA notes, recorded on page 48, often the only people who will challenge a monopolist. They are the people whose damages are larger, who have a better understanding of the market, who are in a position to bring these claims. Now, my client is a direct competitor. There is nobody else who is in a position to bring the claims. What case have you got where one competitor sues another for taking away its employees, staff employees, and thereby violates antitrust laws? The associated case that I just mentioned to you. What's the facts of that? I can't tell you all the facts of it. It's a whole series of things like are alleged here that led to a competitor being harmed, and the Fifth Circuit found that that was sufficient to state an antitrust claim. All right. We'll take a look at that. Thank you, Your Honor. Yeah. Thank you. All right. Mr. Gerson. May it please the court. I'm unfamiliar with the Fifth Circuit case that counsel relies on that isn't in the briefs, but I'm quite familiar with the Fourth Circuit case of ABCOR against AM International, Incorporated, in which this court held specifically that hiring a competitor's employees is not sufficient to establish an antitrust violation. That's at 916 Fed Second 924. This court decided the case in 1990. With due respect to the plaintiff, he does not represent a competitor of Palmetto. He represents a holding company that has this claim. Providence Hospital still exists and still competes with Palmetto. That's a fact. This is precisely the kind of case that Justice Souter wrote about in Twombly. Excuse me, but that doesn't make any difference, does it? I mean, if he represented the hospital that still exists, you wouldn't be saying he then has an antitrust claim, would you? I wouldn't, but the importance of it is that the hospital that still exists could raise such a claim along the lines that Judge Niemeyer was discussing. But I had thought your position would be there still wouldn't be an antitrust claim, even if the hospital that still exists was the plaintiff here. Am I incorrect? No. If the hospital that still exists, which is not here, which is not a party to this case, believed that it was the victim of anti-competitive activity. Well, and they believe they're a victim of anti-competitive activity. That doesn't give you a cause of action believing that. That's right. But my point is they've abandoned the market. I understand what you're saying about them. What I was asking you is, is that distinction really important to you? Because if they did represent a hospital that still existed, would your position be, okay, now you've stated an antitrust claim? No, it wouldn't be any different. That's what I thought. Except that the standing issue would be different. Okay. But that's the basis. I don't understand why it would be different. I don't either. Well, at least in theory. The allegations of this complaint. I thought your theory was that one competitor suing another competitor for raiding is not an antitrust. Absolutely. And so it doesn't matter whether they're there. And they have standing to bring those tort claims. The question is who has standing to bring damage to the competition? And the competitors would be the persons who are benefited by the competition, the lower prices. That's exactly right. And the better benefits. And when they're injured in their business or property by the lack of competition, they have to pay higher prices. Yes, you understand this perfectly. But we don't understand your answer to my question. Yes, what I'm suggesting is I'm making a different point. Okay. There's a lack of antitrust injury here. Put that aside. That's what was just discussed. There's also a lack of antitrust standing. Well, they're very closely linked. They are very closely linked. The first several factors are the same. The type of injury that is antitrust injury is the injury that is sustained by damage to competition. That's correct. And the persons who have injured because of the lack of competition. And my point, Judge Motz, was no more than that. If Providence Hospital, as it exists today and competes with Palmetto, felt that it was the subject of an antitrust violation, it could bring a case and might have standing to do it. In this case. But it wouldn't have had any antitrust injury. It would not have. On the facts of this case, that's correct. That's your submission, anyway. Correct. I mean, what you have here are the reason why the plaintiffs abandoning the market is significant is that they raise a bunch of claims about the future exercise of market power. They can't benefit from that because they're not there. They're also wrong. Providence Hospital is still in the market. There's no allegation that Providence has been dropped from any network. There's no allegation that there are actual higher prices here. There's no allegation that any individual is being denied orthopedic services at any hospital, including Providence. And if any loss has occurred here at all, it's a loss in a whole different market. That's for selling hospitals, not for orthopedic services. As to the physicians and why this court's opinion in ABCOR is persuasive here is this isn't even a rating case. Because of what's referenced in the complaint, we know that the doctors in question only decided to leave after they learned that the then-owners of Providence Hospitals were leaving the market and selling to an out-of-town and out-of-state interest. It was only at that point that they decided to leave, and they had the right to leave. And this is something that's attributable or that lies at the feet of the plaintiffs. Their employment agreement, which is in the complaint, it's referenced in the complaint, says not only that they have the right to leave upon 90 days' notice and then the purchase of certain assets, which they did. And that's an unfettered ability. But in addition to that, that nothing in their affiliation agreement with the plaintiffs here will prohibit any of the more physicians, those are the physicians who left, from operating a medical practice in the primary service area separate from Providence Hospitals following termination. In other words, not only did they have the express permission under the contract to leave, they had the express permission to compete. And it gets worse for plaintiffs because the record also reflects paragraph 144, shows that the doctors were explicitly told that they could continue to practice at Providence after they were employed at Palmetto. There's no antitrust injury at all. The district court correctly understood the law and applied it. I think I've said everything I need to say about the lack of antitrust injury, but that alone isn't the only reason why the district court should be affirmed. There's also a lack of antitrust standing. Judge Niemeyer, you're correct that the first several categories that ADM sets out are injury criteria. I think we've established those. The latter ones relate to who is the appropriate plaintiff. And there are, if indeed these horrors were taking place, there are any number of better plaintiffs who would avoid duplicate recoveries and who could be directly injured if indeed there was such conduct. It includes Providence Hospitals themselves, patient groups, individual patients, insurers, and others. For all these reasons, there is both a lack of antitrust injury and a lack of antitrust standing. This is the kind of case that Twombly and Iqbal teach us, that the Supreme Court has taught us, should be properly dealt with on a motion to dismiss. That's just what the district court did, and the district court respectfully should be affirmed. Thank you, Mr. Pearson.  Thank you, Your Honor. In the earlier argument, you asked me why the doctors left. And I should have told you that the complaint alleges that the doctors wanted to participate in the monopoly that would be created. Paragraph 112 of the- You say that would be created? The orthopedic monopoly, the orthopedic monopoly. There was already a general acute care services monopoly. They wanted to create an orthopedic monopoly. And Paragraph 112 of the complaint, Adjoined Appendix 46, one of the doctors, we had some of their cell phones and we found some of their conversations. They noticed that Palmetto was acquiring a hospital in Sumter, South Carolina, and they say, our chance to control a larger area just got better. So the allegation is, which must be accepted for purposes of this argument, that they were convinced to join the conspiracy to participate in the monopoly that would be created. So I wanted to be sure I responded to that. And then when you look at the associated radio case, Pages 1354 and 1355, talk about this important point. The Angelico case, the Conner case. And then footnote seven of my brief is very important. The competitor's standing in injury is not because of higher prices. The competitors who, by Hornbutt law, repeatedly, many cases recognize they have the standing to sue, because there's... Is this a competition for employees, for doctors? In other words, is Palmetto basically competing for doctors against your client? It's competing for patients. And it wanted to make it so that my client would not be able to compete. And if you would look at the case... You get to the hypothetical that Judge Montz gave you, that if the doctors left to go somewhere else, it's the same problem. You lose the patients because you lost the doctors. The complaint alleged is that the doctors would have... We would have still been able to compete for their patients. By the fact that Palmetto took them, they were forbidden to... We couldn't compete for their patients anymore. If they had gone some other place, the patients preferred to be operated on in this county, and competition for the patients would have continued. That competition was eliminated. And that's what injures a competitor, and that's what gives the competitor standing and antitrust injury. You have to be looking for competition. What competition was injured for whom, and who was hurt? The competitor was hurt because the competitor was no longer able to compete. In the Novell case, from this circuit, Novell was injured because Microsoft made it impossible to compete with... Its WordPerfect program was no longer able to compete. And by the way, that case was brought eight years after Novell sold the WordPerfect business, but it was still able to bring a lawsuit for the injuries to its business. There's a whole lot of cases, which is in our brief, showing that injured competitors do have standing and do suffer injury, and it's not injury in the form of higher prices. It's injury because they are not allowed to compete. The Angelico case is a case. The Radford Hospital case, which we cite in footnote seven, where the hospitals monopolized the durable medical equipment business, and they prevented the plaintiff from competing with them in durable medical equipment. And it wasn't because of high prices. It was because they were handicapped from competing. Novell was injured not because of high prices in the Novell case, but because Microsoft engaged in several practices that made it impossible for Novell to compete. And that's what we have here. This is a classic case of monopolization where the injured competitor, which is my client, has a right to bring this. And it's essential to the enforcement of the antitrust laws, that injured competitors like my client have standing and antitrust injury be recognized. I also want to point out to you, nobody has suggested that this is a problem, but there is no other more directly injured party in this case, because it's not a case like the Cloth case, where there was an indirect purchaser trying to sue, and there was a more directly injured direct purchaser. This is a direct competitor. And when a direct competitor is injured, they are the first line of the injury. They don't pass their injuries on to anyone. They are the only people who can bring their claims for their injury. And in these cases, when the law of monopolization recognizes that it's important not to allow someone who is monopolist to eliminate their rival, that's Hornbeck Law, that's cited in Aretha and Hovey Camp, that also recognizes it's unlawful for them to attempt to monopolize or to conspire to monopolize. And you don't have to have monopoly power existing already to be liable for attempting monopoly or for conspiring to monopolize. You just have to have the possibility of monopoly, which is fully alleged here. And there's clearly classic antitrust injury to my client's ability to compete, because they were all of a sudden prevented from competing for the admissions of these patients. Their networks, their ability to offer orthopedic services was entirely destroyed because all the staff, all the assets, and the doctors left all at one time, and not as a result of fair competition, but as a result of breaches of loyalty and misappropriation of trade secrets and the other things that we have alleged in our complaint. Yes, this is a basis for a business tort, and yes, we are bringing those claims. But, as I pointed out, by ARIDA, and I want to give you the citation to the ARIDA quote. So that's not ARIDA either, but that is ARIDA Section 782E. Any contact between the monopolist and the employees of my client, other than making a bona fide offer of employment, was dangerous, and that's what happened here, and that's why competition was eliminated. Thank you very much. All right. Thank you.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Henry F. Floyd